BANK OF IPSWICH, Appellant, v. HARDING CO. FARMERS' MUTUAL FIRE & LIGHTNING INS. CO., Respondent.

(225 N. W. 721.)

(File No. 6395. Opinion filed June 4, 1929.)

*A. L. Beardsley,* of Ipswich, and *C. M. Parsons,* of Bison, for Appellant.

*McNulty, Williamson & Smith,* of Aberdeen, and *F. M. Jackson,* of Hettinger, N. D., for Respondent.

MISER, C. Respondent is a county mutual insurance company operating under the provisions of sections 9244 to 9263, Rev. Code 1919. On July 14, 1922, it issued to R. J. Clark, one of its members, a standard fire policy covering a barn on his farm. Clark

had theretofore mortgaged said farm to appellant. Attached to this policy was a rider containing "Mortgage Clause with Full Contribution," according to the standard form prescribed by section 9198, Rev. Code 1919. On January 19, 1923, an assessment was duly made against the members of respondent company, and notice of said assessment against Clark, amounting to $8.40, was given him March 5, 1923. This notice informed him that the policy would be suspended after April 15, 1923, if the assessment was not paid, and would be canceled on December 15, 1923, unless paid. A second like notice was given to Clark on June 4, 1923, a third like notice in September, 1923, and a fourth on November 20, 1923. The insured never paid such assessment. On June 12, 1923, respondent company notified appellant mortgagee of the failure of Clark to pay the assessment, and that the company would not be liable for any loss after April 15, 1923. Again on December 10, 1923, respondent company notified appellant mortgagee, by mail, that the policy would be canceled for nonpayment of the assessment on December 15, 1923. This letter contained the following: "We will hold the record open until December 31st, when our fiscal year closes."

▮ Section 9259, relating to notice of assessments to members of a county mutual company, provides: "If payment is not made within the time stated in the notice, the policy of the delinquent member shall stand suspended and shall not be in effect from that time until such payment is made." Therefore, as between Clark and the insurance company, the policy was not in effect when the barn was destroyed by fire on the night of December 17, 1923.

▮▮ But appellant contends that the attachment of the rider containing the standard mortgage clause with full contribution created a new contract between the insurer and the mortgagee, whereby the mortgagee was recognized as a distinct party in interest so long as it should comply with the terms of the mortgage clause agreement. Such was the holding of the court in Ormsby v. Phenix Ins. Co., 5 S. D. 72, 58 N. W. 301. In the case at bar, the mortgage clause in the rider was in part as follows: "Loss or damage, if any, under this policy, shall be payable to Bank of Ipswich, So. Dak., as mortgagee, as interest may appear, and this insurance as to the interest of the mortgagee only therein, shall not

be invalidated by any act or neglect of the mortgagor * * * provided, that in case the mortgagor shall neglect to pay any premium due under the policy, the mortgagee shall, on demand, pay the same."

In the Ormsby Case, this court, in construing the proviso following the one above quoted, said: "The stipulations in the original policy were only suspended as to her [the mortgagee] upon the express condition that she should comply with the terms of the original mortgage clause agreement; and, when she failed to comply with the terms of that agreement, the stipulations in the original policy came into force, and remained in force until the stipulations in such agreement were complied with."

So, in the case at bar, we are of the opinion that, when appellant bank failed to pay the deliquent assessment, it failed to perform one of the conditions of its separate contract with the insurer, and thereby lost the protection afforded by the mortgage clause; that is, Clark having failed to pay the premium and thereby the policy having been suspended as to him, when the appellant mortgagee, being advised of Clark's default, also failed to pay, appellant thereafter also held the insurance subject to the conditions of the original policy. By these conditions, the policy was suspended and remained suspended as to appellant until, after the loss occurred, the assessment was paid. Ormsby v. Phenix Ins. Co., supra.

But appellant contends that the notice of June 12, 1923, was not received by it. The secretary of respondent company testified that the notice was mailed in a securely sealed envelope addressed to appellant, with full postage prepaid, by being deposited in his mail box on the rural route for the carrier to get, on June 12, 1923. He testified that he mailed like notices on the same day and in the same way to all mortgagees in whose favor a mortgage clause "with full contribution" had been attached to policies issued by respondent company, which policies were on June 12, 1923, delinquent. He identified, and there was admitted in evidence, the list of such mortgagees made on June 12th, as an original record of the company. This list contained the names and addresses of nine such mortggaggees, including that of appellant. He testified that he had received replies to some of these letters so mailed on that date. The evidence also shows that there was regular communica-

tion by mail between the rural route on which the secretary lived and the city of Ipswich in which appellant bank was located. Indeed, the evidence shows that a letter from appellant to the secretary of respondent, dated December 17, 1923, the day of the fire, but postmarked "Ipswich, S. Dak., Dec. 18, 6-P. M. 1923," the day after the fire, was answered by the secretary on December 19, 1923. Furthermore, it was admitted that the notice mailed on December 10th was received by the mortgagee; and, while there is no proof as to when it was received, its receipt was acknowledged in appellant's letter of December 17th or 18th above mentioned. For the purpose of this opinion, we may assume, though we do not decide, that the nonpayment in the interval between December 10th and December 18th did not suspend the policy as to appellant. But it is uncontradicted that the notice of June 12th was sent. Its receipt was denied by an officer of appellant bank, who claims to have made a careful search of the bank files at the time the action was started nine months later, for the purpose of locating such notice. None of the six girls employed in the bank, some of whom open the mail and do the filing, testified.

 Is the evidence sufficient to support a finding that the notice of June 12th was received? On this point, 1 Jones on Evidence (2d Ed.) p. 332, § 197, says: "As presumptions have always been created to meet a required convenience as soon as the circumstances have been sufficiently observed and experienced to warrant a reasonable conclusion as to their bearing and effect, so with the increase of postal business the rule has gradually become fixed that, when it is shown that a letter had been deposited in the postoffice properly stamped and correctly addressed to the true place of residence of the person to whom it is sent, it is presumed that he received it in due course of mail. The presumption is based on the fact that the postoffice is a public agency, charged with the duty of transmitting letters, and on the assumption that what ordinarily results from the transmission of a letter through the mails, probably resulted in the given case."

See, also, Lawver v. Ins. Co., 25 S. D. 549, 558, 127 N. W. 615, to the same effect.

In Western Twine Co. v. Wright, 11 S. D. 521, 78 N. W. 942, 44 L. R. A. 438, this court said: "As a rule, to which an exception is very rare, all letters and all telegrams with equal certainty

reach their destination, and, the reasonable intendments with reference to each being identical, the same legal presumption may well be entertained as to both."

In that case, a telegram addressed to another and deposited with an operator for transmission, with charges prepaid, was presumed to have been received by such other. In that case, as in this, the possession of the message was denied by the addressee.

In the case at bar, the letter of June 12th was properly stamped, correctly addressed and deposited in the United States mails by being placed in a box regularly used by the carrier on the rural route to collect outgoing mail left there by the patron and in which to deliver mail addressed to him. With this letter so deposited were other letters from which replies were later received. See Lawrence Bank v. Raney & B. I. Co., 77 Md. 321, 26 A. 119. Other letters, on other dates, passed between the same parties through the same channel. See Covell v. Western Union Telegraph Co., 164 Mo. App. 630, 147 S. W. 555. An agency of the postal service was used which has been extended so as to serve as nearly as practicable the entire rural population of the United States. Act of July 28, 1916, c. 261, § 1; 39 Stat. 423. The protection afforded by the Federal Criminal Code has now been extended to mail deposited in such boxes. Act of May 18, 1916, c. 126, § 10; 39 Stat. 162 (18 USCA § 321). Of interest, though not "on all fours," is Rosen v. United States, 245 U. S. 467, 38 S. Ct. 148, 62 L. Ed. 406.

Granting that the possibility of loss through storms, by meddlers, or by criminal or other agency, may be greater when letters are mailed in a box on a rural route than when deposited in a post office, using the word in its restricted meaning, in a government building and that the inference of delivery may not be so strong and, hence, more easily rebutted, we are of the opinion that there is a rebuttable presumption of delivery. We are cited to the decision of no court to the contrary. Our own search has discovered no case where a distinction has been made. Only by way of dicta, reference is made to deposit in such a box in Kvale v. Keane, 39 N. D. 560, 168 N. W. 74, 9 A. L. R. 972, wherein the North Dakota court said: "We are of the opinion that, where a person undertakes to show that he sent another a letter by mail, no presumption will arise that the letter so sent was received by

the person to whom it was addressed unless it is shown that it was deposited in the postoffice or some department thereof, as, for instance, *in a mail box on a rural route,* and that such letter was properly addressed and stamped with sufficient postage."

This rebuttable presumption, with supporting evidence on behalf of respondent and denial of receipt with its supporting testimony on the part of appellant, was such, in our opinion, as to make the question of receipt a subject for the determination of the trier of fact. Jones on Evidence (2d Ed.) § 202.

In this case, both appellant and respondent moved for a directed verdict at the close of all the evidence. The credibility of the witnesses and the inferences to be drawn from their testimony were determined by the direction of the verdict for respondent. Share v. Coats, 29 S. D. 603, 137 N. W. 402. No request having been made for the submission to the jury of the question of fact, which both parties by their motions had theretofore submitted to the court, this court is only concerned with the legal sufficiency of the evidence to support the verdict directed. We are of the opinion that the evidence of the receipt of the notice of June 12th was legally sufficient.

Appellant contends that respondent extended the time of payment by its statement in the notice of December 10th, "We will hold the record open until December 31st, when our fiscal year closes," and that respondent thereby waived the nonpayment prior to the fire. Appellant does not distinguish, as the statutes and the by-laws of respondent distinguish, between suspension of a policy and cancellation of a policy. Section 9259 provides for the suspension of a policy; section 9262 provides for the cancellation of a policy. When any policy is canceled, sections 9254 and 9262 make it the duty of the secretary to enter such cancellation upon the records of the company. There is no similar provision for entry of suspensions on the records. The notices served both on the mortgagor and the mortgagee observed the distinction between suspension and cancellation. The notice of December 10th was a notice of cancellation. It made no reference to suspension. Not having paid the assessment on the demand of June 12th, the policy was already suspended as to the mortgagee, just as it had been suspended since April 15th as to the mortgagor. Either could reinstate the policy in full force as to future loss by payment of the

assessment, if made prior to cancellation. At best, the language relied upon by appellant extended, as to it, from December 15th to December 31st, the time within which it might avoid cancellation of record by payment. The giving of that notice did not change the fact of suspension, nor the effect thereof, under section 9259, when the fire occurred. For these reasons, the judgment should be affirmed.

Respondent also contends that the judgment should be affirmed because of insufficiency of proof that, at the time of the fire, appellant actually had an insurable interest in the property. But, inasmuch as this judgment must be affirmed for reasons heretofore given, no useful purpose would be served in discussing other alleged grounds for affirmance.

The judgment is affirmed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, and BURCH, JJ., concur.

MISER, C., sitting in lieu of BROWN, J.